**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE COMPANY CORPORATON,  Plaintiff,  v.  MOSTAFA REYAD AND WAFA REYAD,  Defendants. | Civ. No. 00-2237 (GEB)  **MEMORANDUM OPINION** |

**BROWN, Chief Judge**

**I.     BACKGROUND**

This matter comes before the Court upon the motion for summary judgment filed by Plaintiff the Federal Deposit Insurance Company ("FDIC") against 2077 Tenants Corporation (the "Corporation"). (Doc. No. 130)  At a hearing held on July 6, 2010, the Court denied the FDIC's motion for summary judgment as procedurally improper and instead considered the underlying matter as one for civil contempt.  After doing so, the Court held the Corporation in civil contempt of orders issued by then-United States District Judge Greenaway in May and October, 2000, that enjoined the transfer of assets belonging to Defendants Mostafa Reyad and Wafa Reyad.  (GEB Order 7/6/10; Doc. No. 148.)  At the July 6 hearing, however, the Court left open the question of the damages that were proximately caused by the Corporation's civil contempt, as it was unclear whether Wafa Reyad needed and had acquired the Corporation's

authorization to encumber the co-op shares (the "Shares") at issue with the Countrywide mortgage.  Subsequently, on July 22, 2010, the FDIC submitted a letter brief in support of its asserted quantum of damages and therein also sought an award of attorney's fees and expenses. (Doc. No. 151.)  The Corporation submitted a letter brief in opposition on July 29, 2010.  (Doc. No. 153.)  The Court has considered the parties' submissions without further oral argument pursuant to Federal Rule of Civil Procedure 78.  Having done so, the Court will enter the following judgment for the following reasons.

I. DISCUSSION

With their letter briefs, each party has submitted various pieces of evidence that they assert support their relative arguments.  As such, in considering the issue presented, the Court will apply the well-established summary judgment standard.  A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

Applying this standard to the present case, the Court concludes as a matter of law that the damages calculation for the Corporation's civil contempt must exclude the value of the Countrywide mortgage with which Wafa Reyad encumbered the Shares. With its opposition letter the Corporation submitted a copy of the lease (the "Lease") signed by both Wafa Reyad and the Corporation. (Corp. Ex. A.; Doc. No. 153.) As the Corporation correctly notes, the Lease contains no provision that required Wafa Reyad to obtain the Corporation's consent or approval before she secured the Countrywide mortgage with the Shares. This omission is noteworthy when viewed in the context of the Lease as a whole. The Lease contains several detailed paragraphs that exhaustively describe the mandatory procedures that a lessee must follow to assign, transfer, or sublet their apartment. (Corp. Ex. A. at ¶¶ 14-16; Doc. No. 153.) In certain instances, the Corporation's approval is clearly required for a lessee to take the aforementioned actions. Further, critically, the Lease contains a detailed paragraph dedicated to the "Rights of a Secured Party". (*Id.* at ¶ 17.) That paragraph, however, contains no mention of any requirement that a lessee obtain the Corporation's approval before encumbering their shares.

Thus, viewed in sum, the Lease does require the Corporation's approval for certain actions, but does not require the Corporation's approval for a lessee to encumber the Shares. Additionally, the Lease clearly acknowledges that encumbrance of the Shares is permissible. As such, the Court concludes as a matter of law that the Reyads were not required to obtain the Corporation's approval before encumbering the Shares with the Countrywide mortgage. In reaching this conclusion, the Court simply notes the FDIC's contrary argument – namely, that a document produced by the FDIC purportedly shows some acknowledgment by the Corporation of the lien placed on the Shares by Countrywide, and therefore the Corporation is liable for the full

3

sale price of the Shares. (Doc. No. 151.) As described above, regardless of the authenticity of the document produced by the FDIC, the Lease did not require the Corporation's assent for Wafa Reyad to encumber the Shares with the Countrywide mortgage. As such, the document produced by the FDIC is irrelevant and the FDIC's arguments are unavailing. Simply put, Wafa Reyad unilaterally encumbered the Shares and the FDIC cannot, as a matter of both law and equity, recover the value of that encumbrance from the Corporation.

In light of the foregoing conclusion, the Court decides that the appropriate quantum of damages proximately caused by the Corporation's contempt is, $74,573.10, the cash actually paid to the Reyads at the time of closing. This is appropriate because Wafa Reyad could not have liquidated this sum but for the Corporation's contemptuous authorization of the sale of the Shares. In addition, the Court agrees with the FDIC that this amount must be increased by $7,000 to account for the third-party broker fee that would apparently not have been incurred had the shares eventually been foreclosed upon by the FDIC. As such, the Court will enter judgment against the Corporation in the amount of $81,573.10.

Finally, the Court addresses the FDIC's argument that an award of attorney's fees and expenses are appropriate in this case. The Corporation, in opposition, does not challenge either that an award of attorney's fees and expenses is allowable in this case, or the amount of attorney's fees and expenses claimed by the FDIC. Rather, the Corporation simply argues that the Court should not award attorney's fees and expenses to the FDIC in this matter. The Court disagrees. The Corporation's contempt of Judge Greenaway's prior order gave rise to this case. Further, the Corporation's contempt, as noted above, has damaged the FDIC in the amount of $81,573.10, which the FDIC was compelled to recover via litigation. Therefore, whether an

award of attorney's fees and expenses in this matter is mandatory or permissive, the Court concludes that an award is plainly appropriate. As the Corporation has not challenged the FDIC's proffered attorney's fees and expenses, which the Court concludes are adequately supported by the documentation submitted, the Court will award the FDIC its requested attorney's fees of $18,990 and expenses of $3,096.64.

## II. CONCLUSION

For the foregoing reasons, the Court will enter judgment against the Corporation in the amount of $81,573.10, and further order the Corporation to pay the FDIC attorney's fees of $18,990 and expenses of $3,096.64. Finally, the Court will order the Clerk of the Court to CLOSE this case.

Dated: August 26, 2010

        /s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.